UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DAVID MCINTYRE,

              Petitioner,

vs.                     Case No.  2:06-cv-430-FtM-29DNF

SECRETARY, DOC,

              Respondent.

_____

## OPINION AND ORDER

### I. Status

Petitioner David McIntyre (hereinafter "Petitioner" or "McIntyre") initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1; Petition) pursuant to 28 U.S.C. § 2254, attached memorandum of law (Doc. #2; MOL), and exhibits (Exhs A-Z, AA; Pet. Exh.) on August 11, 2006.[1]  Petitioner challenges his judgment of conviction of grand theft of a motor vehicle, fleeing to elude police, and resisting arrest without violence, entered in the Twelfth Judicial Circuit Court in Desoto County, Florida. Petition at 1.  Respondent filed a Response (Doc. #13, Response) and supporting exhibits (Docs. #15, #23), including Petitioner's

_____

[1]The Petition (Doc. #1) was docketed and filed with the Court on August 24, 2006; however, the Court applies the "mailbox rule" and deems the Petition "filed on the date it was delivered to prison authorities for mailing." Alexander v. Sec'y Dep't of Corr., 523 F.3d 1291, 1294 n.4 (11th Cir. 2008).

postconviction motions and hearing transcripts.[2]  Petitioner filed a Reply (Doc. #14, Reply).  This matter is ripe for review.

## II.  Procedural History

The Information charged Petitioner with five counts: (count one) grand theft auto, (count two) possession of a controlled substance, (count three) possession of paraphernalia, (count four) fleeing to elude a police officer, and (count five) resisting arrest without violence.  Exh. 28, vol I.  The State *nolle prosequi* counts two and three.  Id.  Petitioner proceeded to a jury trial and was found guilty as charged on the remaining three counts of grand auto theft, fleeing to elude, and resisting arrest without violence.  In accordance with the verdict, on January 30, 2002, Petitioner was adjudicated guilty and declared a habitual felony offender.  Id., vol II.  The court imposed a sentence of ten-years incarceration on the grand theft auto count, thirty years on the fleeing to elude a police officer count, and time-served on the resisting arrest without violence count.  Subsequent to the judgment of conviction, Petitioner pursued a direct appeal, belated appeal, a Florida Rule of Criminal Procedure 3.850 motion, and appeal thereof; and, a Florida Rule of Criminal Procedure 3.800 motion to correct an illegal sentence, and appeal thereof.  See Petition at 1-6; Response at 3-6.

---

[2]In citing to Respondent's exhibits, the Court uses the bate-stamped numbers on the top of the page for the pinpoint citations when available. However, a few of Respondent's exhibits do not have the bate-stamped numbers.

Petitioner then filed the federal Petition, *sub judice*, raising two claims:

> (1) whether Petitioner's "Sixth Amendment right to a speedy trial was violated under State law, entitling him to release/discharge"; and

> (2) whether Petitioner's Sixth Amendment "confrontation rights were denied when tapes were redacted/introduced after chief witness was excused."

Petition at 7-8. In Response to the Petition, Respondent submits that the grounds are unexhausted and now procedurally barred; or, in the alternative, that the grounds do not satisfy the AEDPA standard of review and do not state a claim. Response at 7. Respondent concedes that the Petition is timely filed, Response at 7-9, and the Court agrees.

### III. Applicable § 2254 Law

The Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996). Penry v. Johnson, 532 U.S. 782, 792 (2001); Davis v. Jones, 506 F.3d 1325, 1331, n.9 (11th Cir. 2007). The relevant legal principles under the AEDPA are set forth below.

### A. Exhaustion

If a ground asserted by a petitioner warrants review by a federal court under § 2254, the petitioner must have first afforded the state courts an initial opportunity to address any federal issues. 28 U.S.C. § 2254(b)(1)(A). This imposes a "total exhaustion" requirement in which all the federal issues must have

first been presented to the state courts. <u>Rhines v. Weber</u>, 544 U.S. 269, 274 (2005). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999). <u>See also</u> <u>Henderson v. Campbell</u>, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting <u>Judd v. Haley</u>, 250 F.3d 1308, 1313 (11th Cir. 2001)); <u>Duncan v. Henry</u>, 513 U.S. 364, 365 (1995)("exhaustion of state remedies requires that petitioners 'fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights'").

A petitioner must present the <u>same</u> claim to the state court that he now requests the federal court to consider. <u>McNair v. Campbell</u>, 416 F.3d 1291, 1302 (11th Cir. 2005)(citations omitted); <u>Kelly v. Sec'y for the Dep't of Corr.</u>, 377 F. 3d 1317, 1343-44 (11th Cir. 2004). Thus, the exhaustion requirement is not satisfied if the claims raised before the state court were not raised in terms of federal law. <u>Gray v. Netherland</u>, 518 U.S. 152, 162-63 (1996); <u>Jimenez v. Fla. Dep't of Corr.</u>, 481 F.3d 1337, 1342 (11th Cir. 2007). With regard to claims of ineffectiveness of trial counsel, a petitioner must have presented those claims to the state court "'such that a reasonable reader would understand each

claim's particular legal basis and specific factual foundation.'" Ogle v. Johnson, 488 F. 3d 1364, 1368 (11th Cir. 2007)(citing McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005)).

If a petitioner fails to exhaust a claim, the court may dismiss the petition without prejudice to permit exhaustion, if appropriate. Pliler v. Ford, 542 U.S. 225, 227 (2004); Rose v. Lundy, 455 U.S. 509, 519-20 (1982). Alternatively, the court has the discretion to grant "a stay and abeyance to allow the petitioner to exhaust the unexhausted claim." Ogle, 488 F.3d at 1370 (citations omitted). However, "when it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, [the courts] can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief." Snowden, 135 F.3d at 736 (citations omitted).

**B. Procedural Default**

"A claim is procedurally defaulted if it has not been exhausted in state court and would now be barred under state procedural rules." Mize v. Hall, 532 F.3d 1184, 1190 (11th Cir. 2008). A procedural default for failing to exhaust state court remedies will only be excused in two narrow circumstances. First, a petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the asserted error. House v. Bell, 547 U.S. 518, 536-37 (2006); Mize, 532 F.3d at 1190. Second, under

exceptional circumstances, a petitioner may obtain federal habeas review of a procedurally defaulted claim, even without a showing of cause and prejudice, if such review is necessary to correct a fundamental miscarriage of justice. House, 547 U.S. at 536; Edwards, 529 U.S. at 451; Henderson, 353 F.3d at 892.

**C. Deference to State Court Decision**

Where a petitioner's claim raises a federal question that was adjudicated on the merits in the state courts, the federal court must afford a high level of deference to the state court's decision. See Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008). Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). See Brown v. Payton, 544 U.S. 133, 141 (2005); Price v. Vincent, 538 U.S. 634, 638-39 (2003). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. Ferguson, 527 F.3d at 1146; Wright v. Sec'y Dep't of Corrections, 278 F.3d 1245, 1253-54 (11th Cir. 2002). See also

Peoples v. Campbell, 377 F.3d 1208, 1227 (11th Cir. 2004), cert. denied, 545 U.S. 1142 (2005).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. Carey v. Musladin, 549 U.S. 70, 127 S. Ct. 649, 653 (2006)(citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). In cases where nothing in the Supreme Court's jurisprudence addresses the issue on point or the precedent is ambiguous and gives no clear answer to the question, it cannot be said that the state court's conclusion is contrary to, or constitutes an unreasonable application of, "clearly established Federal law." Wright v. Van Patten, 128 S. Ct. 743, 747 (2008); Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003).

A state court decision can be deemed "contrary to" the Supreme Court's clearly established precedents within the meaning of § 2254(d)(1) only if: (1) the state court applies a rule that contradicts the governing law as set forth in Supreme Court cases, or (2) the state court confronts a set of facts that is "materially indistinguishable" from those in a decision of the Supreme Court and yet arrives at a different result. Brown, 544 U.S. at 141; Mitchell, 540 U.S. at 15-16. Further, it is not mandatory for a state court decision to cite, or even to be aware of, the relevant Supreme Court precedents, "so long as neither the reasoning nor the

result . . . contradicts them." <u>Early v. Parker</u>, 537 U.S. 3, 8 (2002); <u>Mitchell</u>, 540 U.S. at 16.

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner, <u>Brown</u>, 544 U.S. at 134; <u>Bottoson v. Moore</u>, 234 F.3d 526, 531 (11th Cir. 2000), <u>cert. denied</u>, 534 U.S. 956 (2001); or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." <u>Bottoson</u>, 234 F.3d at 531 (quoting <u>Williams</u>, 120 S. Ct. at 1520). The "unreasonable application" inquiry "requires the state court decision to be more than incorrect or erroneous"; it must be "objectively unreasonable." <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75-77 (2003) (citation omitted); <u>Mitchell</u>, 540 U.S. at 17-18. Depending upon the legal principle at issue, there can be a range of reasonable applications. <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 663-64 (2004). Thus, the state court's decision is not subject to federal review <i>de novo</i>; rather, § 2254(d)(1) relief is only available upon a showing that the state court decision meets the "objectively unreasonable" standard. <u>Id.</u> at 665-66.

A § 2254 petitioner can also obtain relief by showing that a state court decision "was based on an unreasonable determination of

the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2). Where the credibility of a witness is at issue, relief may only be granted if it was unreasonable, in light of the evidence presented, for the state court to credit the testimony of the witness in question. Rice v. Collins, 546 U.S. 333, 338 (2006). Additionally, a factual finding by a state court is presumed to be correct and a petitioner must rebut this "presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Miller-El v. Dretke, 545 U.S. 231, 240 (2005); Henderson, 353 F.3d at 890-91. This statutory presumption of correctness, however, "applies only to findings of fact made by the state court, not to mixed determinations of law and fact." Parker v. Head, 244 F.3d 831, 836 (11th Cir.), cert. denied, 534 U.S. 1046 (2001) (citation omitted). An ineffective assistance of counsel claim is a mixed question of law and fact; therefore, the presumption does not apply and such claims are reviewed *de novo*. Rolling v. Crosby, 438 F.3d 1296, 1299 (11th Cir.), cert. denied sub nom. Rolling v. McDonough, 126 S. Ct. 2943 (2006).

## IV. Analysis

This Court has carefully reviewed the record and, for the reasons set forth below, concludes no evidentiary proceedings are required in this Court. Schriro v. Landrigan, 550 U.S. 465, 472-473 (2007). Petitioner does not proffer any evidence that would require an evidentiary hearing, Chandler v. McDonough, 471 F.3d

1360 (11th Cir. 2006), and the Court finds that the pertinent facts of the case are fully developed in the record before the Court. Schriro, 550 U.S. at 473; Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).

**A. Speedy Trial Claim**

Petitioner submits that his Sixth Amendment right to a speedy trial was violated. See Petition at 7; MOL at 4-10. In support of this claim, Petitioner states that he was arrested on May 28, 2001, and his trial was to commence on December 6, 2001, but did not commence until December 14, 2001. Petition at 7. Petitioner, *inter alia*, claims that the State "entered into a collusion with the trial court judge." MOL at 7.

Respondent points out that on December 10, 2001, which was four days before trial was suppose to begin pursuant to Petitioner's agreement to extend the speedy trial period by four days, Petitioner filed a *pro se* petition for writ of habeas corpus in the appellate court, arguing that his rights under Florida's speedy trial rule were violated. Response at 14; Pet. Exh. I. The appellate court converted the petition into one of prohibition and directed Petitioner's appointed defense counsel to respond and advise the court whether counsel adopted the petition. Pet. Exh L. In accordance with the appellate court's order, defense counsel filed a response, noting that he was appointed to represent Petitioner on December 7, 2001, for a trial term commencing on

December 14, 2001.  Pet. Exh. K.  Defense counsel requested an extension of time to file a response, but advised the court that he declined adoption of the petition, if the court required an immediate response.  Id.  On January 9, 2001, the appellate court denied the Petitioner's State petition as moot.  Pet. Exh. L; McIntyre v. State, 808 So. 2d 221 (Fla. 2d DCA 2002).

Petitioner did not raise this purported violation of his speedy trial rights on direct appeal.  Thus, Respondent submits that Petitioner did not properly exhaust ground one, and as such the claim is now procedurally defaulted under State law.  Response at 13-14. Specifically, Respondent argues, "[a]fter the appellate court correctly denied the petition for writ of prohibition as moot, McIntyre could have, and should have, raised the issue again in his direct appeal."  Id. at 14.

Upon review of the record, the Court agrees with Respondent and finds that Petitioner did not raise ground one on direct appeal; and, as such, the ground is unexhausted, and now procedurally defaulted under Florida law.  See Exh. 1; Fla. R. Crim. P. 3.191; see also Brown v. State, 843 So. 2d 328 (Fla. 1st DCA 2003)(holding when a writ of prohibition seeking discharge on speedy trial grounds is denied, the speedy trial issue can be raised on direct appeal).  Petitioner does not establish cause, prejudice, or a fundamental miscarriage of justice to overcome the procedural default.

In the alternative, ground one is denied on the merits.  The

Sixth Amendment provides that "[i]n all criminal prosecutions, the

accused shall enjoy the right to a speedy . . . trial."  U.S.

Const. Amend. VI.  The courts look at four factors to determine

whether a violation of the right has occurred: (1) the length of

the delay; (2) the reason for the delay; (3) the defendant's

assertion of his right; and (4) prejudice to the defendant.  <u>Barker</u>

<u>v. Wingo</u>, 407 U.S. 514, 530 (1972).

> 'The first factor serves a triggering function; unless
> some "presumptively prejudicial" period of delay
> occurred, we need not conduct the remainder of the
> analysis.' <u>United States v. Register</u>, 182 F.3d 820, 827
> (11th Cir. 1999).  'A delay is considered presumptively
> prejudicial as it approaches one year' from indictment to
> trial. <u>United States v. Schlei</u>, 122 F.3d 944, 987 (11th
> Cir. 1997); <u>see also</u> <u>United States v. Harris</u>, 376 F.3d
> 1282, 1290 (11th Cir. 2004)(explaining that a delay of 18
> months is presumptively prejudicial).

<u>Jackson v. Benton</u>, 315 Fed. Appx. 788, 792 (11th Cir. 2009).  While

Petitioner asserts that his trial occurred beyond the time period

allowed by the Florida rules, the United States Constitution does

not provide a right to be brought to trial within that time period.

<u>Routly v. Singletary</u>, 33 F.3d 1279, 1291-92 (11th Cir. 1994).  The

Florida speedy trial rule enforces the right to speedy trial

guaranteed by the Florida Constitution and Florida statute, not the

United States Constitution.  <u>Allen v. Dep't of Corr.</u>, 288 Fed.

Appx. 643, 645 n.1 (11th Cir. 2008).

The record reflects that on November 21, 2001, appointed

defense counsel filed a "Notice of Expiration of Time for Speedy

Trial," noting that Petitioner was arrested on May 28, 2001, and was entitled to be brought to trial within 175 days. Pet. Exh. A. Based upon the Notice, a hearing was scheduled on November 30, 2001. Pet. Exh. B. The State filed a motion to extend the speedy trial period, explaining that its primary witness, Crystal English, who was the passenger in the subject vehicle stolen by Petitioner, could not be located despite the efforts of law enforcement officials. Pet. Exh. C. The State submitted that there was reason to believe that Ms. English left the State of Florida and that her testimony was necessary for prosecution of the case. Id. The State argued that these grounds constituted an "exceptional circumstance" to warrant the extension of the speedy trial time period until December 3, 2001. Id. (citing State ex rel. Norman v. Merckle, 369 So. 2d 964 (Fla. 2d DCA 1979)).

On November 30, 2001, the trial court held a hearing on a Notice. See generally Pet. Exh. E. During the hearing, defense counsel calculated the time for speedy trial and added time for the court's closure as a result of Tropical Storm Gabriel and the Thanksgiving holiday. Id. at 77-78. The morning of the hearing, the State filed a Notice, indicating that they had secured witness Crystal English, who had been located outside the State of Florida, and was able to obtain a statement from her. Id. at 79, 82. The State provided defense counsel with this supplemental discovery, including Petitioner's recorded telephone conversations with Crystal English and Gregory Judy from the jail that implicated him

in the case. Id. Defense counsel asked the court for a brief recess to speak with Petitioner. Upon return, defense counsel told the court that he and Petitioner disagreed about the time calculation for the speedy trial date and the State's introduction of the new evidence. Id. at 84-85. Petitioner claimed that his trial should start on December 3, 2001, but defense counsel believed that the necessary date for speedy trial purposes was December 10, 2001. Id. Specifically, defense counsel stated:

> MR. CUMMER: I guess where we are is this, Mr. McIntyre wants to go forward next Monday, two days -- three days from now. And I've told Mr. McIntyre that they have until the following Monday, December 10th, to do it, and that even if it was December 10, based on what the State has proffered here today as new evidence, et cetera, that I probably couldn't be ready by then.

Id. at 86. The hearing continued as the parties discussed the dates that defense counsel would be prepared for trial, in light of the need to review the new discovery and depose witnesses.[3] Again before the end of the hearing, defense counsel conferred with Petitioner:

> MR. CUMMER: If I may have a moment, Judge.
>
> All right, Judge. Let the record reflect that I spoke to Mr. McIntyre in open court and asked him if he wants to be properly prepared. I said I could do my very best efforts to be prepared to pick a jury on the 14th, which is four days past the 10 days expiration period, and that

---

[3]The court noted that Petitioner "extended these proceedings unduly through his complaints about his lawyer, and he brought that on himself." Id. at 90. In fact, Petitioner had filed another complaint on defense counsel Mr. Cummer, with the Florida Bar, which was discussed during the November 30 hearing.

he would go to trial with witnesses on the 17th of
December.  And Mr. McIntyre agreed to that.

Id. at 103.

Based on the record, the length of the delay was only four
days, from December 10 to December 14 when the jury was selected.
Testimony then started December 17, 2001, which is the date that
Petitioner eventually agreed to in order to allow his defense
counsel enough time to properly prepare.[4]  Thus, Petitioner
essentially waived any speedy trial issue by consenting to the
extension of the four-day time period.  The record belies
Petitioner's contention that he was "coerced."

Additionally, even if no time was waived, the Court finds that
the delay of 200 days from date of arrest to date of trial is not
"presumptively prejudicial."  See Schlei, 122 F.3d at 987 (stating
that a delay is presumptively prejudicial when it approaches one-
year).  The other factors, even if reached, would not support a
speedy trial violation under the Sixth Amendment.  The record is
clear that the reasons for the delay was to permit the state to
locate a missing witness and to allow defense counsel sufficient
time to properly prepare for trial in light of the State's newly
proffered evidence.  Both reasons are legitimate reasons which
justify an appropriate delay.  Barker, 407 U.S. at 534 (missing

---

[4]Although Petitioner had initially insisted that defense
counsel be prepared to go to trial in 3 days, despite counsel's
need for time to review the State's newly proffered evidence,
Petitioner later filed a motion for postconviction relief raising
more than seven grounds of ineffective assistance of counsel.

witness serves to justify appropriate delay).[5]  While Petitioner did assert his speedy trial rights under the Florida procedure, he has not shown any prejudice resulted from the delay.  Accordingly, Petitioner has not satisfied the requisite standards set forth pursuant to the AEDPA.  Based on a review of the record, ground one is dismissed as procedurally defaulted, or, in the alternative, is denied on the merits.

## B. Confrontation Clause Claim

In ground two, Petitioner argues that his "confrontation rights" pursuant to <u>Crawford v. Washington</u>, 541 U.S. 36 (2004) were

---

[5]Later, on December 7, 2001, defense counsel filed a motion to withdraw based on Petitioner's "refusal to cooperate or communicate with [counsel] in any fashion."  Exh. 26 at 198.  Specifically, counsel stated, "[w]hen I met with [McIntyre] on December 3rd to play him the taped statements of Crystal English and Gre[g] Judy the State gave to use the previous Friday at the notice of expiration of speedy hearing, Mr. McIntyre refused to participate in those or allow me to play them for him. He indicated to me at that time that he had pressed criminal charges against me for, I believe, tampering with a witness and false imprisonment."  <u>Id.</u> at 108-109.  During the motion to withdraw hearing, Petitioner claimed he had hired private counsel, Mr. Johnny Hutchinson, from Lakeland.  The court took a recess and called Mr. Hutchinson's office.  Upon return, the court said that Mr.  Hutchinsons' office never heard from McIntyre.  The court granted Mr. Cummer's motion to withdraw and appointed Mr. Kirshy as defense counsel.  <u>Id.</u> at 113.  There, Petitioner asserted that he "h[ad] a lot more [that] ha[d] to be done in [his] case before this [case] goes to trial []."  <u>Id.</u> at 111.  Petitioner stated, "I don't want somebody stepping in like him or a lawyer and just having one week, [sic] don't think it's fair to them."  <u>Id.</u> at 115.  Thus, the record shows that Petitioner raised a speedy trial issue conveniently when the State could not locate its primary witness, later refused to cooperate with his defense counsel, misrepresented to the court that he had hired private counsel, and then wanted additional time for newly appointed defense counsel to review the case despite his previous speedy trial claim.

denied. Petition at 8. In support, Petitioner contends that the State withheld evidence, consisting of recorded conversations from the jail between himself and the State's chief witness, Crystal English, until the last minute and then used the evidence as leverage in an effort to persuade Petitioner to waive his speedy trial rights. See generally MOL at 11-15. Petitioner claims that the prosecutor, himself, redacted the tapes "without any explanation of the methods he used to redact them other than to say that any 'extraneous material' had been removed." Id. at 12. Thus, Petitioner argues that the trial court committed an error by allowing the recorded statements into evidence. Id. at 13.

In Response, Respondent submits that this claim was not raised on direct appeal, is unexhausted, and is now procedurally defaulted under Florida law. Response at 17. Respondent asserts that although Petitioner contends that he raised this claim in his Rule 3.850 motion, a matter that can be raised on direct appeal is not cognizable in a postconviction attack. Id. at 17 (citing Harvey v. Dugger, 656 So. 2d 1253, 1256 (Fla. 1995)(stating that issues that could have but were not raised on direct appeal or issues that were raised and rejected on direct appeal are not cognizable through collateral attack)). Further, Respondent refers the Court to Petitioner's postconviction records and argues that a review of the Rule 3.850 motion shows that Petitioner did not raise a confrontation claim, instead arguing that counsel was ineffective. Id. at 17.

Upon review of the record, the Court agrees with Respondent and finds that Petitioner did not raise ground two on direct appeal; and, as such, the ground is unexhausted, and now procedurally defaulted under Florida law. Claims of trial court error should be raised on direct appeal, not a Rule 3.850 motion. See State v. Johnson, 651 So. 2d 145, 146 (Fla. 2d DCA 1995) (holding "purpose of rule 3.850 is not to review ordinary trial errors reviewable by means of direct appeal").

Here, Petitioner filed a motion for leave to file a belated appeal, arguing that appellate counsel rendered ineffective assistance. Exh. 5. One of the grounds raised in this motion concerned the introduction of the recorded conversations, but Petitioner argued that the court erred when it did not listen to all of the recorded statement before permitting the introduction of the statements into evidence. Id. at 14-15. Upon review of the record, it is clear that Petitioner did not alert the State courts to a federal issue involving the confrontation clause. Petitioner also filed a Rule 3.850 motion, raising the issue that defense counsel was ineffective for not playing the recorded conversations to Crystal English, so that she could testify to the matters contained in those calls. Petitioner maintained in his postconviction motion that the tapes were "taken out of context." See Pet. Exh. R; Exh. 12. Again, however, Petitioner did not present a federal confrontation clause issue to the State courts in his Rule 3.850 motion. Petitioner does not establish cause,

-18-

prejudice, or a fundamental miscarriage of justice to overcome the procedural default of ground two. See generally Reply at 3 (stating "[g]iven the severity of the constitutional violation, this ground may be considered exhausted."). Based on the record, the Court dismisses ground two because Petitioner did not exhaust this claim before the State courts and it is now procedurally defaulted.

In the alternative, ground two is denied on the merits. The Sixth Amendment of the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. Amend. VI. The court held a pretrial hearing where the recorded statements were played before counsel and the judge. See Exh. 27.[6] Defense counsel objected to the admission of the recorded statements, arguing that the statements were prejudicial. Defense counsel also raised an argument that Petitioner wanted counsel to raise, despite disagreeing with Petitioner, that the entire recorded statements should be played to the jury. Id. at 11-12. After hearing the parties' respective arguments, the judge admitted the redacted statements into evidence:

> THE COURT: Okay. I think it puts everything in context in this whole case, and I believe they are admissible.
>
> And as Professor Hart explains, this is a statement by party opponent, and I think also by the drive-off that

---

[6]Exhibit 27 is not Bates-stamped, and, as such, the Court cites to the page number of the transcript.

> puts everything in context, why the police officers did what they did, the logical sequence of what went on.
>
> So for that reason, too, I think it would be admissible once the corpus is proved.

Id. at 19-20. Thereafter, the hearing concluded and the jurors entered the courtroom. Id. at 21.

Matters concerning admission of evidence and the Confrontation Clause are different, but protect similar values. California v. Green, 399 U.S. 149, 155-56 (1970). Petitioner does not specify in his Petition or attached memorandum of law how his right to confront these witnesses was violated. During the course of the trial, both Crystal English and Gregory Judy testified and were subject to cross-examination. See Exh. 28, vol IV at 48-95.[7] Ms. English and Mr. Judy, in fact, testified about the recorded statements. Thus, Petitioner's right to cross-examine these witnesses "at trial concerning [their] current and prior testimony satisfie[s] the commands of the Confrontation Clause. Id. at 49-61, 132-145. Green, 399 U.S. at 153; see also United States v. Owen, 484 U.S. 554, 560 (1988). Petitioner has not satisfied the AEDPA standards. As such, ground two is dismissed as procedurally defaulted, or, in the alternative is denied on the merits.

ACCORDINGLY, it is hereby

**ORDERED:**

---

[7]Exhibit 28, vol IV is not bate-stamped, and, as such, the Court cites to the page number of the transcript.

1. Petitioner's Petition for Writ of Habeas Corpus is **DISMISSED** as procedurally defaulted as to both grounds; or, in the alternative, is **DENIED** on the merits.

2. The Clerk of Court shall terminate any pending motions, enter judgment accordingly, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida, on this __18th__ day of August, 2009.


_____
JOHN E. STEELE
United States District Judge


SA: alj
Copies: All Parties of Record